# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| GAIL PIRKLE, DAVID PIRKLE and THERESA VYTLACIL, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> MIDLAND CREDIT MANAGEMENT, INC. and MIDLAND FUNDING, LLC, <br><br> Defendants. | Case No.: 17-cv-173 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Gail Pirkle is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff David Pirkle is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiff Theresa Vytlacil is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6. Plaintiffs are each a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from each a debt allegedly incurred for personal, family or household purposes. Specifically, the alleged debts were personal credit card accounts.

7. Defendant Midland Credit Management, Inc. ("MCM") is a foreign corporation with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108.

8. MCM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. MCM is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Midland is a debt collector as defined in 15 U.S.C. § 1692a.

10. Defendant Midland Funding LLC, ("Midland Funding") is a Delaware corporation with its principal place of business located in California. The Wisconsin Department of Financial Institutions lists Midland Funding's address as 3111 Camino Del Rio North, San Diego, CA 92108. Midland Funding's actual address may be MCM's address.

11. MCM and Midland Funding are wholly owned subsidiaries of Encore Capital Group, Inc. ("Encore").

12. Midland Funding is engaged in the business of a collection agency, in that it purchases and receives assignment of consumer debts that are in default at the time Midland Funding acquires them. MCM uses the mails and telephone to collect consumer debts originally owed to others and currently held by Midland Funding. Midland Funding, directly or indirectly, is a debt collector under this arrangement. 15 U.S.C. § 1692a(6).

13. The FDCPA treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not. 15 U.S.C. §

1692a(6)(F)(iii); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003), *citing Bailey v. Sec. Nat'l Serving Corp.*, 154 F.3d 384, 387 (7th Cir. 1998); *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1998); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403-04 (3d Cir. 2000); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-07 (6th Cir. 1996); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).

14. A company meeting the definition of a "debt collector" under the FDCPA (here, Pendrick) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

15. Midland Funding, directly or indirectly, is a debt collector under the above arrangement and is jointly responsible for MCM's actions. 15 U.S.C. § 1692a(6); *Pollice*, 225 F.3d at 404-05.

## FACTS

### *Pirkle Letters and Envelopes*

16. Plaintiff Gail Pirkle had a personal credit card account with Synchrony Bank ("Synchrony"). The last four digits of the account number were "7509" ("Account 7509"). Account 7509 was a "Preferred Vet" branded credit card account.

17. Prior to February 19, 2016, Account 7509 went into default.

18. Prior to February 19, 2016, and after Account 7509 was in default, Synchrony sold or otherwise assigned the ownership rights Account 7509 to Midland Funding.

19. On or about February 19, 2016, MCM mailed a debt collection letter to Plaintiff Gail Pirkle regarding Account 7509, then allegedly owed to Midland Funding. A copy of this

3

letter is attached to this complaint as <u>Exhibit A</u> and a copy of the letter in the envelope in which it was received is attached as <u>Exhibit B</u>.

20. Plaintiff Gail Pirkle also had a JC Penney-branded personal credit card with Synchrony. The last four digits of the account number were "2884" ("Account 2284").

21. Prior to February 19, 2016, Account 2284 went into default.

22. Prior to February 19, 2016, and after Account 2284 was in default, Synchrony sold or otherwise assigned the ownership rights to Account 2284 to Midland Funding.

23. On or about February 19, 2016, MCM mailed a debt collection letter to Plaintiff Gail Pirkle regarding Account 2284, then allegedly owed to Midland Funding. A copy of this letter is attached to this complaint as <u>Exhibit C</u> and a copy of the letter in the envelope in which it was received is attached as <u>Exhibit D</u>.

24. Plaintiff Gail Pirkle had a third personal credit card with Synchrony, this one a "Sam's Club" branded card. The last four digits of the account number were "5110" ("Account 5110").

25. Prior to February 19, 2016, Account 5110 went into default.

26. Prior to February 19, 2016, and after Account 5110 was in default, Synchrony sold or otherwise assigned the ownership rights to Account 5110 to Midland Funding.

27. On or about February 19, 2016, MCM mailed a debt collection letter to Plaintiff Gail Pirkle regarding Account 5110, then allegedly owed to Midland Funding. A copy of this letter is attached to this complaint as <u>Exhibit E</u> and a copy of the letter in the envelope in which it was received is attached as <u>Exhibit F</u>.

28. Plaintiff David Pirkle also entered into a consumer transaction with Synchrony for a personal credit card.

29. MCM represented that the last four digits of the account number were "5110" ("Account 5110, #2"), and the account was a "Sam's Club" branded credit card.

30. The "original account numbers" for the two accounts ending in 5110 were different accounts with different account numbers. All but the last four digits are redacted pursuant to Fed. R. Civ. P. 5.2(a)(4).

31. Prior to February 24, 2016, Account 5110, #2 went into default.

32. Prior to February 24, 2016, and after Account 5110, #2 was in default, Synchrony sold or otherwise assigned the ownership rights to Plaintiff's account to Midland Funding.

33. On or about February 24, 2016, MCM mailed a debt collection letter to Plaintiff David Pirkle regarding an alleged debt with an account number ending in 5110, allegedly owed to Midland Funding and originally owed to Synchrony Bank ("Synchrony"). A copy of this letter is attached to this complaint as Exhibit G and a copy of the letter in the envelope in which it was received is attached as Exhibit H.

34. The alleged debts identified in Exhibits A, C, E, and G were for personal credit card accounts used only for personal, family or household purposes.

35. Exhibit B, Exhibit D, Exhibit F, and Exhibit H included extraneous text.

36. The exterior faces of Exhibit B, Exhibit D, Exhibit F, and Exhibit H, containing Plaintiffs' mailing addresses and visible to any person viewing the envelope include the following text: "**TIME SENSITIVE DOCUMENT**" (emphasis in original).

37. The exterior faces of Exhibit B, Exhibit D, Exhibit F, and Exhibit H, containing Plaintiff's mailing address also states in the upper right hand corner, "U.S.POSTAGE PAID MCM."

38. The Fair Debt Collection Practices Act prohibits unfair debt collection practices. 15 U.S.C. § 1692f.

39. This prohibition includes 15 U.S.C. § 1692f "(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business."

40. The language on Exhibits B, D, F, and H violates the plain language of 15 U.S.C. § 1692f(8). The statute contains no exemptions – any extraneous text on the envelope or on the outside of a self-mailer violates 15 U.S.C. § 1692f(8).

41. Moreover, the extraneous text indicates that the letters are debt collection letters. *See Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303-04 (3d Cir. 2014) (disclosure through window envelope "implicates a core concern animating the FDCPA—the invasion of privacy."); *Peter v. GC Services L.P.*, 310 F.3d 344, 351 (5th Cir. 2002).

42. In *Peter*, for example, the Fifth Circuit held that text on the envelope impersonating the U.S. Department of Education:[1] "implicates this core concern of the FDCPA [impersonating public officials]." *Peter*, 310 F.3d at 351-52.

43. The language on Exhibit B, Exhibit D, Exhibit F, and Exhibit H violates the plain language of 15 U.S.C. § 1692f(8). *Douglass*, 765 F.3d at 303-04; *Peter*, 310 F.3d 351 (5th Cir. 2002).

---

[1] US Department of Education
   P.O. Box 4144
   Greenville, TX 75403-4144
   Official Business
   Penalty for Private Use, $ 300
*Peter*, 310 F.3d at 347.

44. Likewise, in *Douglass*, the Third Circuit held that a collection letter displaying the consumer's account number and a QR code[2] that linked to the consumer's alleged debt, through a "glassine" window envelope, violated § 1692f(8). *Douglass*, 765 F.3d at 303 ("Convergent's disclosure implicates a core concern animating the FDCPA—the invasion of privacy.")

45. As in *Douglass* and *Peter*, the language on Exhibit B, Exhibit D, Exhibit F, and Exhibit H implicates a core concern animating the FDCPA – privacy.

46. Several sections of the FDCPA prohibit debt collectors from publicly disclosing that the consumer allegedly owes a debt, or that the debt collector is collecting a debt.

47. For example, 15 U.S.C. § 1692f(7) prohibits: "Communicating with a consumer regarding a debt by post card." The content of a post card is visible to anyone who views it.

48. Likewise, 15 U.S.C. § 1692c(b) prohibits most communications with third parties:

> (b) **Communication with third parties**
> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

49. 15 U.S.C. § 1692b allows but strictly regulates communications with third parties for the purpose of obtaining the consumer's location information, including explicit prohibitions against stating "that such consumer owes any debt," and using "any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt." 15 U.S.C. §§ 1692b(2), 1692b(5).

---

[2] http://en.wikipedia.org/wiki/QR_code

7

Case 2:17-cv-00173-WED     Filed 02/06/17     Page 7 of 17     Document 1

50. Privacy of the consumer's personal information, including the existence and amount of a debt, is clearly "a core concern animating the FDCPA." *Douglass*, 765 F.3d at 303-04.

51. The statement: "**TIME SENSITIVE DOCUMENT**" explicitly discloses to anyone viewing <u>Exhibit B</u>, <u>Exhibit D</u>, <u>Exhibit F</u>, and <u>Exhibit H</u> that the letter's purpose is debt collection.

52. The acronym "MCM" also indicates to the unsophisticated consumer that the letter is from a debt collector.

53. Virtually 100 percent, if not actually 100 percent, of MCM's business consists of debt collection.

54. MCM is one of the largest debt buyers and debt collectors in the industry, with consumer debt portfolios in the hundreds of millions of dollars. MCM and Midland Funding's parent corporation, Encore's 10-K filing states that Encore has "one of the industry's largest financially distressed consumer databases." (Form 10-K, 12/31/13, p. 2).

55. According to Encore's 2013 Form 10-K, MCM's parent Encore *spent* over $525 million to purchase consumer credit card accounts in the U.S. As MCM paid less than 10 cents on the dollar, the face value of those accounts is in the tens of billions of dollars. Encore purchased similar amounts of U.S. consumer credit card accounts in 2012 and 2011.

56. Upon information and belief, *each* of Defendants' consumer credit card debt portfolios contains tens of thousands, if not hundreds of thousands of individual accounts.

57. Upon information and belief, MCM mails hundreds of thousands, if not millions, of debt collection letters each year to hundreds of thousands, if not millions of Americans.

58. Upon information and belief, hundreds of thousands, if not millions of Americans who have had one or more credit card account charged off and sold, have received at least one phone call and/or debt collection letter from MCM, and are aware that MCM is a debt collector.

59. Terms like "TIME SENSITIVE DOCUMENT" are commonly used by debt collectors to get consumers to open their letters instead of treating them like "junk mail."

60. The inclusion of the "time sensitive" language with "MCM" makes clear to the unsophisticated consumer, and a significant number of third parties who may see the envelope, that the letter is from a debt collector.

61. MCM's use of its commonly-used acronym for its name and the term "TIME SENSITIVE DOCUMENT" on the outside of its envelope violates 15 U.S.C. § 1692f(8).

62. The unsophisticated consumer, viewing Exhibit B, Exhibit D, Exhibit F, and Exhibit H would conclude that Exhibit B, Exhibit D, Exhibit F, and Exhibit H are debt collection letters.

63. The sole purpose of the above statements is to make clear that Exhibit B, Exhibit D, Exhibit F, and Exhibit H are debt collection letters/envelopes.

64. Further, it is simple for a debt collector to comply with 15 U.S.C. § 1692f(8) – do not print extraneous information on the envelopes or allow it to show through the glassine windows of envelopes.

### *Vytlacil Letter*

65. Plaintiff Theresa Vytlacil had a personal credit card account with Synchrony Bank ("Synchrony"). The last four digits of the account number were "5374" ("Account 5374"). Account 7509 was a "CareCredit" branded credit card account.

66. Prior to March 17, 2016, Account 5374 went into default.

67. Prior to March 17, 2016, and after Account 5374 was in default, Synchrony sold or otherwise assigned the ownership rights Account 5374 to Midland Funding.

68. On or about March 17, 2016, MCM mailed a debt collection letter to Plaintiff Gail Vytlacil regarding Account 5374, then allegedly owed to Midland Funding. A copy of this letter is attached to this complaint as <u>Exhibit I</u>.

69. <u>Exhibit I</u> was the first letter that MCM sent to Vytlacil regarding Account 5374. The letter contains the FDCPA debt validation notice, pursuant to 15 U.S.C. § 1692g(a).

70. <u>Exhibit I</u> also offers a settlement offer of 10% off the total balance if the Plaintiff pays by May 1, 2016.

71. <u>Exhibit I</u> is confusing to the unsophisticated consumer because it demands a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

72. The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offer in <u>Exhibit A</u>.

73. The consumer needs time to process the information contained in an initial debt collection letter before deciding whether to dispute, pay or take other action. This is the point of the 30 day period in 15 U.S.C. 1692g(a).

74. Prior to deciding whether to dispute a debt, a consumer may have to sort through personal records and/or memories to try to remember if the debt might be legitimate. She may not recognize the creditor – debts are freely assignable and corporations, especially banks, often

10

change names. Indeed, MCM sent Exhibit I to Vytlacil because both the ownership and servicing rights to the alleged debt had recently changed.

75. Moreover, once a consumer sends a dispute in writing, the creditor is under no obligation to provide verification in any specific amount of time, or even to provide verification at all, so long as the debt collector ceases collection efforts until it does so. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997) ("Section 1692g(b) thus gives debt collectors two options when they receive requests for validation. They may provide the requested validations and continue their debt collecting activities, or they may cease all collection activities.")

76. The § 1692g validation period lasts for 30 days. It is the consumer's right to *request* verification until the end of the thirty day period. If the request is not made until the end of the thirty day period, the verification request would not be processed, researched by the creditor, and returned to the consumer until long after settlement offer payment deadline has expired. The consumer would be left with no time to review the verification and determine whether to accept the settlement offer.

77. The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offers in Exhibit A. It is likely that the settlement offer would expire before the debt collector provides verification. The consumer would be left with little or no time to review the verification and determine whether to accept the settlement offer.

78. The effect of the settlement offer in the initial written debt communication is to discourage or prevent consumers (and specifically the unsophisticated consumer) from exercising their validation rights.

11

79. Defendant did not include adequate explanatory language in <u>Exhibits A and B</u>, *see, eg. Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997). The only language arguably linking the settlement offer with the validation notice is the statement:

> P.S. These payment opportunities do not alter or amend your validation rights as described on the reverse side.

<u>Exhibit I</u>.

80. MCM's language is ambiguous, unclear and confusing to the unsophisticated consumer, who would have no idea what it means by "alter or amend your validation rights." It is not possible to tell what the language actually means or how MCM would interpret it from the face of the letter.

81. In order to preserve the settlement offer in the event of a written dispute, and to preserve the 30-day validation period itself, any explanatory language should make clear that a dispute will extend the settlement offer while the debt collector is in the process of complying with its obligation to verify the debt.

82. There is no requirement that a consumer make a showing of materiality for a debt collector's failure to comply with 15 U.S.C. § 1692g(a). *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).").

83. For the purposes of Plaintiff's claims under 15 U.S.C. § 1692e, in general, false, misleading or confusing statements about the debt itself, or about the creditor's, debtor's or debt collector's rights or intentions, are all material. *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009).

84. Plaintiffs were confused by <u>Exhibits A-I</u>.

85. The unsophisticated consumer would be confused by <u>Exhibits A-I</u>.

12

Case 2:17-cv-00173-WED    Filed 02/06/17    Page 12 of 17    Document 1

86. Plaintiffs had to spend time and money investigating Exhibits A-I.

87. Plaintiffs had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiffs on the consequences of Exhibits A-I.

88. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

89. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection

practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

90. Midland Funding, who purchased the Plaintiff's and class members' alleged debts after those debts were in default, is vicariously liable for MCM's actions in collecting debts on its behalf. *Janetos*, 825 F.3d at 325-26 (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

## COUNT I – FDCPA

91. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

92. Exhibit B, Exhibit D, Exhibit F, and Exhibit H contain extraneous text, including the statement: "**TIME SENSITIVE DOCUMENT**." Exhibit B, Exhibit D, Exhibit F, and Exhibit H disclose the existence of a debt and that they are from a debt collector.

93. The acronym "MCM" also indicates to the unsophisticated consumer that the letter is from a debt collector.

94. The unsophisticated consumer viewing Exhibit B, Exhibit D, Exhibit F, and Exhibit H would determine that Exhibit B, Exhibit D, Exhibit F, and Exhibit H were mailed by a debt collector.

95. Defendants violated 15 U.S.C. §§ 1692f and 1692f(8).

## COUNT II -- FDCPA

96. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

97. The settlement offer in Exhibit I with a deadline conflicts with and overshadows the debt validation notice, in that it demands a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

98. Exhibit I is confusing, deceptive, and/or misleading to the unsophisticated consumer.

99. 15 U.S.C. § 1692g(b) states, in part:

(b) **Disputed debts**
…
Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

100. 15 U.S.C. § 1692e provides, in relevant part: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

101. 15 U.S.C. § 1692e(10) prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

102. Defendants violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692g.

## CLASS ALLEGATIONS

103. Plaintiffs bring this action on behalf of two Classes.

104. Class 1 consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form(s) represented by Exhibit A, Exhibit C, Exhibit E, and Exhibit G to the complaint in this action, (c) in envelopes in the form(s) represented by Exhibit B, Exhibit D, Exhibit F, and Exhibit H to the complaint in this action, (d) seeking to collect a debt for personal, family or household purposes, (e) between February 6, 2016 and February 6, 2017,

inclusive, (f) that was not returned by the postal service. Plaintiffs Gail Pirkle and David Pirkle are the representatives for Class 1.

105. Class 2 consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit I</u> to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between February 6, 2016 and February 6, 2017, inclusive, (e) that was not returned by the postal service.

106. Each Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

107. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibits A-I</u> violate the FDCPA.

108. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

109. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

110. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## **JURY DEMAND**

111. Plaintiffs hereby demand a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: February 6, 2017

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com